Michael David HOAG, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–84–00104–CR.

Court of Appeals of Texas,
San Antonio.

June 5, 1985.

Rehearing Denied July 10, 1985.

Edward R. Lytle, San Antonio, for appellant.

Sam Millsap, Jr., Linda Anderson, District Attorney's Office, San Antonio, for appellee.

Before CANTU, TIJERINA and DIAL, JJ.

## OPINION

DIAL, Justice.

This is an appeal from a conviction of burglary of a habitation with intent to commit theft, repeater. TEX.PENAL CODE ANN. § 30.02(a)(1) (Vernon 1974). Trial was before the court, and punishment was assessed at 30 years' confinement.

The defendant does not challenge the sufficiency of the evidence. By four grounds of error he complains of the admission into evidence of the fruits of an alleged illegal search and seizure.

A San Antonio detective had received information implicating the defendant in a recent burglary. The detective requested a team of "task force" officers to place the defendant under surveillance. The officers followed and observed the defendant for two days. They saw him enter an apartment complex, return to his car, and drive away. The decision was then made to stop the defendant resulting in the complained of search and seizure.

■ At the time the officers stopped the defendant, they possessed the following collective knowledge: [1]

1. The defendant's car was recently seen at the scene of a burglary.

2. Witnesses to that burglary picked defendant's picture as being that of a person who "looked like the one that was involved in the burglary," but were unable to make a positive identification.

[1] Where there has been some decree of communication between the officers, the cumulative knowledge of all the officers working on the case is considered in determining the reasonableness of their actions. *Martinez v. State,* 635 S.W.2d 629, 633 (Tex.App.—Austin 1982, pet. ref'd); *United States v. Michel,* 588 F.2d 986, 998 (5th Cir.), *cert. denied,* 444 U.S. 825, 100 S.Ct. 47, 62 L.Ed.2d 32 (1979).

3. The defendant had previously been convicted of a burglary and was on parole at the time.

4. The day before the defendant had left his home at approximately 10:30 a.m. and driven slowly around in residential areas far away from his home.

5. On the day in question the defendant left his home at approximately the same time and drove slowly around in residential areas in a part of town away from his home.

6. The defendant did not have regular employment anywhere in the area where he was driving.

7. The defendant approached one residence and looked in; he looked at the garage door to see if it would open.

8. The defendant knocked on the door of another residence several times and while doing this looked around "very suspiciously." When he received no response at the door he walked around the side of the house and into the backyard.

9. The defendant drove to an apartment complex, exited his car with nothing in his hands, and went into the complex out of the view of the officers.

10. He returned in about twenty-five to thirty minutes with something in his hands about the size of a newspaper and took something else out of his trousers and put it on the floorboard of the car by the driver's seat. He then drove away in his car.

The defendant was then stopped by a uniformed officer and asked to exit the car. An officer then looked into the open passenger area of the vehicle. He saw an orange-handled diving knife sticking out from under the driver's seat. He also saw a fairly large size lump under the rubber floormat. The officer then entered the vehicle, picked up the knife, and flipped back the floormat. Coins and jewelry were there revealed, which were ultimately admitted into evidence.

The seizure of these items of evidence can be justified on two grounds.

First, the officers had the right to temporarily detain the defendant while verifying if a burglary had actually taken place and ascertaining its location. It is well-settled that a brief detention of a suspicious individual in order to maintain the status quo momentarily while obtaining more information may be most reasonable in light of all the facts known to the officers at the time. *Armstrong v. State*, 550 S.W.2d 25, 30 (Tex.Crim.App.1977). The totality of the circumstances are looked to. An occupant of an automobile is just as subject to brief detention as is a pedestrian. *Id.* Detention based on a mere hunch is illegal. There must be a reasonable suspicion by the officers that some activity out of the ordinary is occurring or had occurred, some suggestion to connect the detained person with the unusual activity, and some indication that the activity is related to crime. *Shaffer v. State*, 562 S.W.2d 853, 855 (Tex.Crim.App.1978).

It is permissible to inquire of the person detained to explain his suspicious activity. *United States v. Brignoni-Ponce*, 422 U.S. 873, 882, 95 S.Ct. 2574, 45 L.Ed.2d 607, 617 (1975). Any further detention or search must be based on consent or probable cause.

Here the detention took place while other officers were seeking to locate evidence of a burglarious entry in the apartment complex. After the defendant was stopped, one of the officers saw the knife and the bulging floormat in plain view. This was followed by an actual search of the vehicle and an agreement by the defendant to show the officers where the burglary had occurred. Probable cause then existed for full arrest.

In order to justify the intrusion under these circumstances the officer must have specific articulable facts, which in light of his experience and personal knowledge, together with other inferences from those facts, would reasonably warrant the intrusion of the freedom of the citizen detained for further investigation. *Baldwin v. State*, 606 S.W.2d 872, 874 (Tex.Crim.

App.1980). Here the experienced task force officers concluded "He did things that would point to an experienced police officer that he was looking to burglarize." "It just didn't appear that he was looking for a friend or a place to live." "There's a difference between somebody looking at apartments and somebody looking to get in an apartment." The detention must be based on objective perception of events rather than the subjective feelings of the detaining officers. *Armstrong*, 550 S.W.2d at 30. The events here warranted the officers' action.

Similar temporary detentions have been upheld on fewer articulable facts. In *Johnson v. State*, 629 S.W.2d 99 (Tex.App.—El Paso 1982, no pet.) an officer on patrol noticed a car backed into the driveway of a residence. He saw the defendant and a third person exit the house with an unidentified object which they placed in the trunk of the car. The officer blocked the driveway and asked the defendant if he lived there, which he replied in the negative. The officer ascertained that the door of the house had been broken into and items were scattered about. The court held that the officer was justified in detaining the accused while he checked and found the house had been broken into.

In *Ablon v. State*, 537 S.W.2d 267 (Tex. Crim.App.1976) an officer saw the accused in a fenced backyard of a residence at 10:45 a.m. No one was at home; the defendant lived several miles away, and this was a high burglary area. The court upheld a temporary detention for purposes of investigation and a pat-down search that produced a bottle containing a controlled substance. *Id.* at 268.

In *Brem v. State*, 571 S.W.2d 314 (Tex. Crim.App.1978), the defendant was a suspect in several prior rape cases. The officer received a radio report of another rape and went immediately to the defendant's house, where the defendant arrived five to ten minutes later. Defendant fit the description of the assailant broadcast. His jeans were partially unbuttoned and he was not wearing underwear. He was detained for five to ten minutes. On the basis of all the information the court held that the officer was justified in detaining the defendant for further investigation. *Id.* at 318.

The defendant contends that he was arrested when he was stopped by the officers and not merely detained for investigation. This was based on the testimony of one of the officers who when asked if this was an investigative detention, replied "I felt he was under arrest."

Whether or not a person is under arrest is not to be determined by the opinion of the arresting officer. Rather it is a factual question to be determined upon the particular facts of the case. *Boone v. State*, 629 S.W.2d 786, 789 (Tex.App.—Houston [14th Dist.] 1981, no pet.). In a suppression hearing the trial judge is the sole finder of facts. The trial court's factual determination, if supported by the record, should not be overturned on appeal. *Davis v. State*, 657 S.W.2d 17, 19 (Tex.App.—Fort Worth 1983, pet. ref'd).

In the present case, at the end of the suppression hearing the trial judge said, "I think that based on the evidence that I've heard that there were sufficient facts for the police officers to go ahead and stop your client. So your motion to suppress is denied." It is therefore unclear whether the trial court found that there were sufficient articulable facts for an investigative stop or probable cause for an arrest. A court of appeals will presume that the trial court made all necessary findings to support its judgment if such findings are supported by the evidence. *Merritt v. State*, 643 S.W.2d 448, 450 (Tex.App.—Corpus Christi 1982, no pet.). For the reasons stated above a finding by the trial court that an investigative stop was reasonable under the circumstances would be supported by the evidence in the record.

If the trial judge concluded that the officers had probable cause to arrest the defendant, not just an investigative stop, that ruling would likewise be supported by the evidence in the record. An

arrest of the defendant without a warrant would have been justified under either TEX.CODE CRIM.PROC.ANN. art. 14.-01(b) (Vernon 1983) or TEX.CODE CRIM. PROC.ANN. art. 14.03(a) (Vernon 1983).

Under article 14.01(b) an officer may arrest an offender without a warrant for an offense committed in his presence. Under the facts known by all of the officers collectively and communicated among them it was reasonable for them to assume that the defendant had committed a burglary or was in possession of stolen property in their presence.

■ Article 14.03(a) gives more specific authority. A person found in a suspicious place and under circumstances which reasonably show that the person has committed a felony can be arrested without a warrant. The manner in which the defendant had been driving slowly through various residential areas, stopping to knock on doors, and going into backyards resulted in the apartment complex becoming a suspicious place for the defendant at that time of day. A residential area in the middle of the day becomes a suspicious place for a daytime residential burglar who lives someplace else.

*Saylor v. State*, 650 S.W.2d 441 (Tex. App.—Houston [14th Dist.] 1982), *aff'd*, 660 S.W.2d 822 (1983) is remarkably similar. There police officers received information resulting in the surveillance of the defendant. The officers constantly watched the defendant as he slowly drove up and down streets in a residential area. The defendant left the car and went to the front door of several homes and then continued walking the streets. He approached a house, disappeared behind the house for approximately twenty minutes out of the officers' view, and reappeared near the front of the house with his pockets bulging. The pockets had not been in this condition before he approached the house. The court found that the warrantless arrest and search of the defendant was supported by probable cause, and art. 14.03 was cited.

The overruling of the motion to suppress in our present case would be justified under the sound reasoning applied in *Saylor*.

All four grounds of error are overruled. The judgment of conviction is affirmed.

TIJERINA, J., dissents.

TIJERINA, Justice, dissenting.

I respectfully dissent.

The sufficiency of the evidence has not been challenged. The assignments of error concern the alleged wrongful admission of evidence, over objection, on a claim of illegal arrest and illegal search. Appellant specifically contends that the court erroneously admitted into evidence coins, currency, a ring, State's Exhibit 3, which was a photograph of such items, and a police officer's testimony of statements made by appellant. The facts established that a burglary detective received information concerning a burglary. The officer was provided with the license number, description of the vehicle and general description of the burglar. The witnesses were unable to make a positive identification of appellant from the photographic line-up. Investigation showed that appellant was the owner of the vehicle, and he was placed under surveillance by the police task force.

On the first day of surveillance, the officers saw appellant come out of his apartment and drive his vehicle to a residential area in the vicinity of Bitters and Broadway streets where they lost contact. The following day at 10:40 A.M. the officers on the stake out investigation saw appellant come out of his apartment and drive his vehicle to a site behind an apartment complex at Rendezvous and Silver Sands streets. He was observed as he walked up to a house located on Fantasia Street and knocked on the front door; when there was no response, he walked to the back of the house. The officer following appellant subsequently checked the house but found no evidence of attempted burglary. Officer Bratton saw appellant drive off from this area and proceed to an apartment complex by Blanco Road where he left his

vehicle but returned in 3 to 5 minutes. Appellant was then seen by Detective West parking his car at the Waterbridge Apartments located at 1401 Patricia Street. Officer Eigner saw him get out of the car; he was not seen again until 20 to 25 minutes later, when he was observed returning to his car with a soda water and what appeared to be a newspaper in his hand. Officer Bratton stated he saw appellant take something out of his pants and place it on the floorboard on the driver's side. Appellant was arrested and read his *Miranda* [1] rights; his car was searched and silver coins, currency and a ring were seized as evidence. Appellant then showed the officer the apartment burglarized.

The officers did not have a warrant for the arrest of appellant nor did they have a search warrant for his person or vehicle. It is significant that this was a daytime burglary and that the State has acknowledged that the arrest and search of appellant was predicated on TEX.CODE CRIM. PROC.ANN. art. 14.03(a) (Vernon Supp. 1985). This statute provides in pertinent part, as follows, viz:

> Any peace officer may arrest, without warrant:
>
> (a) persons found in suspicious places and under circumstances which reasonably show that such persons have been guilty of some felony or breach of the peace, or threaten, or are about to commit some offense against the laws....

Appellant was observed driving, parking and walking at and near several apartment complexes in broad daylight. There were no circumstances established by the evidence showing that he was committing a felony or a breach of the peace, or that he was threatening or about to commit some offense against the laws.

The State's case rests on the existence of probable cause to justify the warrantless arrest of appellant and the search and seizure of evidence from his vehicle. Probable cause for an arrest exists where, at that moment, the facts and circumstances within the knowledge of the arresting offi-

cer and of which he has reasonably trustworthy information would warrant a reasonable and prudent man in believing that a particular person has committed or is committing a crime. *Brown v. State*, 481 S.W.2d 106, 110 (Tex.Crim.App.1972). However, the basis for the arrest cannot be predicated on an inarticulate hunch, mere suspicion, or even good faith belief that the person to be arrested has committed a crime. *United States v. Brignoni-Ponce*, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); *Hull v. State*, 613 S.W.2d 735, 738–39 (Tex.Crim.App.1981); *Armstrong v. State*, 550 S.W.2d 25, 31 (Tex.Crim.App. 1977). The warrantless detention or arrest of a person cannot be justified on the subjective feelings of the officer, but may be justified rather on the objective perception of the events. *Armstrong v. State, supra.* Most recently the United States Supreme Court in *United States v. Cortez*, 449 U.S. 411, 417–18, 101 S.Ct. 690, 694–95, 66 L.Ed.2d 621 (1981), stated that on consideration of the totality of the circumstances, "the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity."

In the instant case the officer who was provided with the information concerning the prior burglary told the task force officer that appellant was a known active burglar; however, the record does not support this conclusion with direct evidence. It was established that the officer did not get an arrest warrant because the witnesses could not positively identify appellant. Moreover, his conduct and activities while under surveillance were not expressly suspicious. Appellant made no effort to conceal himself and the officers certainly did not see him commit any overt act which could be interpreted as wrongdoing. Where the events are as consistent with innocent activity as with criminal activity, a detention based on those events is unlawful. *Johnson v. State*, 658 S.W.2d 623, 626 (Tex.Crim.App.1983); *Schwartz v. State*, 635 S.W.2d 545, 547 (Tex.Crim.App.1982);

---

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct.     1602, 16 L.Ed.2d 694 (1966).

*Shaffer v. State,* 562 S.W.2d 853, 855 (Tex. Crim.App.1978).

In *Saylor v. Texas,* 650 S.W.2d 441 (Tex. App.—Houston [14th Dist.] 1982), *aff'd,* 660 S.W.2d 822 (Tex.1983), the defendant was similarly under surveillance as he drove up and down residential streets, stopped and approached several homes. The officer testified that the defendant returned to his car with his pockets bulging, and that his pockets had not been in such condition before he approached the house actually burglarized. In *Sheffield v. State,* 647 S.W.2d 413, 415 (Tex.App.—Austin), *pet. ref'd per curiam,* 650 S.W.2d 813 (Tex. 1983), the officer testified he saw defendant exit the building at a *"very rapid pace"* with a wallet and some dollar bills in his hands. Another officer observed him walking "at a pretty fast clip" and at the same time going through a ladies' wallet. In the case at bar there were no such suspicious or incriminating circumstances. Appellant was seen carrying a soda water and an object that looked like a newspaper; he then took something out of his pants and placed it on the floor board. These actions were as consistent with innocent activity as with criminal activity. Additionally, the officers did not have a particularized and objective basis for suspecting appellant of criminal activity. Accordingly, I conclude that appellant's arrest was illegal and the search and seizure of the evidence was not an incident to a lawful arrest. The evidence, having been seized pursuant to an unlawful arrest, was inadmissible. The first two points of error should be sustained, and I would reverse and order appellant discharged. *Greene v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978).